Fletcher, J.
The defendant claims exemption from liability to pay the tolls, for the recovery of which this suit was instituted, under and by virtue of the contract made by the plaintiffs with Wood and Hildreth.
The defendant and his servants, residing and having their homes upon the land described in the written contract of the *322 plaintiffs, come by the terms of the instrument very clearly within the description of persons exempted from paying tolls, and who have a right to pass the bridge free from toll “ in all the usual ways of travel.” The defendant and his servants, passing the bridge with his teams, passed it in a usual way of travel, within the express terms of the contract; ar d the place where the teams were kept, and the places to and from which they proceeded, and the particular course or route by which they were driven, are wholly immaterial. By residing and having their homes on the land, the defendant and his servants became entitled to pass the bridge, in the manner it was passed, free from toll, according to the terms and provisions of the deed or instrument given by the plaintiffs to Wood and Hildreth.
But the plaintiffs say, that although they made the instrument in which their contract is contained, and for a valuable and satisfactory consideration, yet, that it is wholly void and without effect, for the reason, that they had no legal capacity or power, even for a valuable and satisfactory consideration, to make a contract or engagement, to release persons from their obligations to pay tolls for passing the bridge. The whole question therefore in this case is, whether the plaintiffs had the legal power or capacity to make the deed or contract in question, and whether it is now binding on the corporation. This question must be determined by a consideration of the the plaintiffs’ charter or act of incorporation. The plaintiffs have such powers, and only such powers, in relation to this subject, as are either expressly or impliedly given to them by their charter. A corporation is an artificial person created by law with certain powers, for certain purposes, but within the scope of its general powers may contract and bind itself, and do any other act as fully and freely as a natural person.
By the plaintiffs’ charter certain persons are incorporated for the purpose of erecting a bridge, and for the purpose of remunerating the proprietors the money by them to be expended in building and supporting the bridge, a toll is granted for the sole use and benefit of the proprietors, equal to that allowed by law to the proprietors of another bridge to *323 which reference is made by name. Here is an express grant to the plaintiffs of a right of toll to a certain prescribed extent. The plaintiffs’ right to their toll, within the limit prescribed, is by the grant absolute, unrestricted and unqualified. This subject of tolls, therefore, is clearly within the scope of the general powers of the corporation in regard to which they have a right to act and to contract. There can be no doubt, that parties making contracts for a release of the whole or a part of the tolls would be bound by their contracts, and the corporation itself must be equally bound. In truth, the plaintiffs themselves, while they deny their right to release the tolls by the instrument executed by them for that purpose, yet by bringing this action to compel the payment of the amount of the tolls, necessarily and in effect assert in themselves, by their acts, the very right and power, which, by their words, they deny. If the plaintiffs have a right to sue the defendant for the tolls, they must, of course, have the right to compromise with him, and to accept something other than actual payment of the sum claimed, in satisfaction, and to give a release. If the plaintiffs have the right now, for a consideration satisfactory to themselves, to release the defendant from liability for these tolls, they surely had the right to release him by the instrument, which they executed to Wood and Hildreth, for which they received a satisfactory consideration.
But it is said, that by the plaintiffs’ charter the commonwealth and the towns of Dracut and Chelmsford have certain rights to, and interests in, said bridge, which rights and interests might be prejudiced by the plaintiffs, if they have the right to release persons from the payment of tolls. It must be observed that this objection is made, not by the commonwealth or the towns, but by the corporation itself. Whether the contr act in this case, under all the circumstances, referring to the prospects for the future as well as to the existing facts, was favorable or unfavorable to the interests of the commonwealth and of the towns, does not appear, and for aught that appears it may have been favorable.
The legislature, if it had thought proper, might have restricted the power of the corporation in regard to making such *324 contracts, but not having restricted it, the contracts must be binding, whatever may be their effect upon the interests of the commonwealth or the towns. A contract with a corporation may be binding on the parties, though it be an abuse of the corporate powers, for which the corporation may be answerable to the government which created it.
The act of 1843, c. 50, passed by the legislature in addition to the plaintiffs’ act of incorporation, among other things particularly specifies and prescribes the rates of tolls, and contains the following section: “ § 6. This act shall not impair the rights of any person or corporation acquired under any contract made with said proprietors; and the said proprietors shall not, by reason of any existing contract, require any person to pay any higher rate of tolls than that hereby established.” This section expressly recognizes the right of the corporation, under its original charter, to make contracts in regard to the tolls, which right, to be sure, appears clearly enough by the charter itself.

Judgment for the defendant.